OPINION
{¶ 1} Defendant-appellant, Christopher Balwanz, appeals from a Belmont County Common Pleas Court judgment convicting him of one count of possession of drugs and one count of failure to comply with the order or signal of a police officer, after a jury trial, and the sentence that followed.
 {¶ 2} In the early morning hours of July 29, 2000, Officers William Shallcross and Peter Busack effected a traffic stop of appellant on Noble Street in Bellaire. The officers had outstanding warrants for appellant. Officer Shallcross exited his cruiser and approached appellant, who was sitting in his truck. Officer Shallcross advised appellant about the warrants and told him to park his truck and shut it off. Instead of parking his truck, appellant took off at a high rate of speed. A chase ensued. Appellant drove up Central Avenue, going the wrong way down the one-way street. While on Central Avenue, appellant turned his lights off. The chase ended at a Microtel on Route 40, where appellant stopped in the parking lot. By this time, other officers had arrived to help. The officers arrested appellant. Upon searching appellant, Officer Shallcross found $5,385 cash in appellant's pocket.
 {¶ 3} Later, around 3:00 a.m., Officer Busack and another officer went back to Central Avenue to search the area where appellant had turned his lights off to see if appellant had thrown anything from his truck. Officer Busack searched from the street, but did not see anything.
 {¶ 4} The next day, Mildred Duffy, who resided at 1020 Central Avenue, went out to get her mail. She found a bag containing white powder near the sidewalk leading to her mailbox. Mrs. Duffy brought the bag to the Bellaire Police Department and turned it over to Officer John Calhoun. The bag was a large Ziploc bag containing seven smaller bags. A field test revealed that the bag contained cocaine. Further testing at the Bureau of Criminal Investigation ("BCI") confirmed that the substance in the bag was cocaine in the amount of 193.5 grams.
 {¶ 5} Later that night, Dorothy Hodgins and Debbie Hall were sitting outside on Ms. Hodgins' porch. Ms. Hodgins lived across the street from Mrs. Duffy. They noticed a man walking down the street looking in Mrs. Duffy's yard. Both women identified appellant as the man they saw that night.
 {¶ 6} The Belmont County Grand Jury indicted appellant on one charge of failure to comply with the order or signal of a police officer, a fourth degree felony in violation of R.C. 2921.331(B), and one count of possession of cocaine in an amount exceeding 100 grams but less than 500 grams, a second degree felony in violation of R.C. 2925.11(A). The indictment also contained a forfeiture specification according to R.C. 2925.42 for the $5,385 found on appellant during the offenses.
 {¶ 7} The case proceeded to a jury trial. The jury returned guilty verdicts on both counts. Additionally, the jury found that the $5,385 was subject to forfeiture. The trial court entered appellant's sentence on September 26, 2001. It sentenced appellant to 18 months in prison for failure to comply and eight years in prison for possession of cocaine. The court ordered that appellant serve his sentences consecutively.
 {¶ 8} Appellant filed a request for a delayed appeal along with a notice of appeal on July 15, 2002. As the basis for this request, appellant asserted that his counsel had led him to believe he had filed an appeal on appellant's behalf. In an August 23, 2002 journal entry, this court granted appellant leave to file a delayed appeal and appointed the Ohio Public Defender's Office to represent him.
 {¶ 9} Appellant raises six assignments of error. His first two assignments of error share a common basis in law and fact. Thus, they will be addressed together. They state:
 {¶ 10} "The evidence presented at christopher balwanz's trial was insufficient to support his conviction. Mr. Balwanz's conviction is not supported by the manifest weight of the evidence."
 {¶ 11} "The trial court erred in denying Mr. Balwanz's motions for acquittal because there was insufficient evidence to prove that he was guilty of possession of drugs."
 {¶ 12} Appellant contends that his possession conviction is against both the manifest weight of the evidence and the sufficiency of the evidence. He does not take issue with his failure to comply with the order of a police officer conviction. First, appellant argues no direct evidence linked him to the cocaine found in Mrs. Duffy's yard. He points out that neither officer saw him throw anything from his car or found any drugs in his possession. Second, appellant contends the circumstantial evidence does not prove his guilt beyond a reasonable doubt. He points out that Mrs. Duffy did not believe that State's Exhibit 3, the package of cocaine, was the same one she found in her yard. Next, he notes that Dorothy Hodgins' trial testimony was inconsistent with her preliminary hearing testimony. Also, appellant states that officers testified he was at the police station and at the hospital during the time Ms. Hodgins and Debbie Hall saw a person near Mrs. Duffy's house. Finally, appellant points out Ms. Hodgins and Ms. Hall testified the person they saw in Mrs. Duffy's yard was wearing a blue shirt; however, the evidence showed that appellant was not wearing a blue shirt that night.
 {¶ 13} An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard that an appellate court uses to review a sufficiency of the evidence claim. Statev. Rhodes, 7th Dist. No. 99-BA-62, 2002-Ohio-1572, at ¶ 9;State v. Carter (1995), 72 Ohio St.3d 545, 553.
 {¶ 14} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997),80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 15} Alternatively, in determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 16} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 17} Appellant was convicted of violating R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance." When the drug involved is cocaine, the offender is guilty of possession of cocaine. R.C.2925.11(C)(4). The degree of the offense is determined by how much of the drug the offender is convicted of having. R.C.2925.11(C)(4). Appellant was convicted of possessing 193.5 grams of cocaine. "If the amount of the drug involved equals or exceeds one hundred grams but is less than five hundred grams of cocaine that is not crack cocaine * * *, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree." R.C. 2925.11(C)(4)(d).
 {¶ 18} The evidence at trial revealed the following. Officer Shallcross testified that he and Officer Busack stopped appellant because appellant had outstanding warrants. (Trial Tr. 25, 28). He stated that appellant initially pulled over for him. (Trial Tr. 28). Officer Shallcross informed appellant why they had stopped him and instructed him to turn off his truck. (Trial Tr. 29). Instead of parking, appellant took off at a high rate of speed. (Trial Tr. 29). Officers Shallcross and Busack jumped back into their cruiser and chased after appellant. (Trial Tr. 29). According to Officer Shallcross, appellant turned the wrong way down Central Avenue, a one-way street. (Trial Tr. 31). It took the officers a little while to catch up to appellant but they caught a glimpse of his taillights going up Central Avenue. (Trial Tr. 31). Officer Shallcross also stated that while appellant was in the 10 hundred block of Central Avenue, appellant turned his lights off. (Trial Tr. 32). Officer Shallcross stated that Mildred Duffy's house was on the driver's side of the road when appellant drove up Central Avenue. (Trial Tr. 32).
 {¶ 19} Officer Shallcross testified that they pursued appellant with their lights and sirens on. (Trial Tr. 33-34). Appellant eventually stopped at a Microtel on Route 40. (Trial Tr. 36). After placing appellant under arrest, Officer Shallcross searched appellant and found $5,385 cash in one of his pants pockets. (Trial Tr. 42).
 {¶ 20} Officers Shallcross and Busack testified they did not see appellant throw anything from the truck. (Trial Tr. 49, 67). However, Officer Shallcross also testified that while appellant drove up Central Avenue, they did not have a clear view of appellant's vehicle. (Trial Tr. 42).
 {¶ 21} Officer Busack testified that around 3:00 a.m. that night, he and another officer went back to Central Avenue to see if appellant had thrown anything from his vehicle. (Trial Tr. 61). He stated that he walked up the street with a flashlight and did not see anything. (Trial Tr. 62). However, Officer Busack said that the search was not very thorough because it was dark and he never left the roadway. (Trial Tr. 64).
 {¶ 22} Officer John Calhoun testified that he was working the desk at the Bellaire Police Department on July 29, 2000, when Mildred Duffy came in a little after 7:00 p.m. and gave him a plastic bag she found in her yard. (Trial Tr. 92, 101; State's Exh. 3). Officer Calhoun identified State's Exhibit 3 as the bag Mrs. Duffy turned in. (Trial Tr. 94). He and Officer Dick Flanagan testified they performed a field test on the contents of the bag, which tested positive for cocaine. (Trial Tr. 96, 131).
 {¶ 23} Mrs. Duffy, who resided at 1020 Central Avenue, testified that on July 29, 2000 around 5:30 p.m., she went out to her mailbox and noticed a bag in her yard, which she picked up and brought to the police station. (Trial Tr. 102-103). Mrs. Duffy stated that there was a sidewalk from her porch to her mailbox. (Trial Tr. 103). She testified that the bag was down off the sidewalk in the grass or dirt a little ways. (Trial Tr. 103). She further testified that the bag would not have been visible from the road because there was a wall, a hill, and a ledge by the sidewalk. (Trial Tr. 103-104).
 {¶ 24} Mrs. Duffy described the bag she found as a Ziploc bag with green and yellow containing little bags wrapped up inside. (Trial Tr. 104). She also stated the bag was "full of that stuff, whatever was in it." (Trial Tr. 104). However, when appellee showed Mrs. Duffy State's Exhibit 3, the bag with the cocaine, Mrs. Duffy said it did not feel the same as the bag she turned in. (Trial Tr. 104-106). She stated that the Ziploc bag was just like the one she found but that it did not feel soft like the bag she turned in did. (Trial Tr. 119-120).
 {¶ 25} Gregory Kiddon, a forensic scientist at BCI, testified that he analyzed the substance in the bag and found that it was a cocaine mixture weighing 193.5 grams. (Trial Tr. 82-84, 88). Kiddon also testified that 193.5 grams equaled between six and seven ounces. (Trial Tr. 90). He stated that each individual bag weighed approximately 28 grams, or one ounce. (Trial Tr. 90). Kiddon testified that this was consistent with the cocaine being packaged to sell. (Trial Tr. 90).
 {¶ 26} Officer Flanagan testified that appellant was bonded out of jail at approximately 8:30 p.m. on July 29, 2000. (Trial Tr. 133-34). Officer Jason Weekly testified that appellant arrived at the police station on July 29th, between 9:00 and 10:00 p.m. (Trial Tr. 144). He testified that appellant was wearing a light blue shirt and white pants. (Trial Tr. 144). Chief Robert Wallace, who was also at the police station when appellant came in after being bonded out of jail, testified that appellant was wearing a blue top and white pants at that time. (Trial Tr. 157).
 {¶ 27} Debbie Hall and her mother-in-law, Dorothy Hodgins, testified that they were sitting outside on Ms. Hodgins' porch during the evening of July 29, 2000 around 9:00 p.m. (Trial Tr. 171, 186, 189). At the time, Ms. Hodgins lived at 975 Central Avenue, directly across the street from Mrs. Duffy's house. (Trial Tr. 185). Ms. Hall testified that she noticed a man wearing white pants and a blue shirt walking down the street looking toward Mrs. Duffy's yard. (Trial Tr. 171). She testified it appeared as though the man was looking for something in the yard. (Trial Tr. 172). She stated she then saw a black car with a spoiler drive up and the man disappeared. (Trial Tr. 171-72).
 {¶ 28} Ms. Hodgins also testified she saw a white male with long blonde hair walking slowly in front of Mrs. Duffy's house looking in the yard. (Trial Tr. 188). She stated the man was wearing white pants and a blue shirt. (Trial Tr. 189). Ms. Hodgins also testified that she saw a black car with a spoiler drive down the street and stop in between her house and Mrs. Duffy's house. (Trial Tr. 191-92). Finally, Ms Hodgins testified she noticed a light from a flashlight in a wooded area on the side of Mrs. Duffy's house. (Trial Tr. 195-96).
 {¶ 29} Ms. Hall and Ms. Hodgins identified appellant in court as the man they saw that night. (Trial Tr. 173, 199-200). However, when Ms. Hodgins was asked at the preliminary hearing if she could identify appellant in a lineup as the man she saw that night, she could not. (Trial Tr. 200-201). She explained this by saying that she was only able to identify appellant from a side view because that is how she had seen him. (Trial Tr. 201).
 {¶ 30} Furthermore, Officer Weekly testified that at the Microtel at the time of appellant's arrest, he noticed appellant's girlfriend, Amy Kohr, and her car, a black 1999 Pontiac Trans Am or Firebird. (Trial Tr. 142-43). Officer Weekly testified that Ms. Kohr's car had a spoiler on the trunk. (Trial Tr. 143). Additionally, Chief Wallace testified that he followed appellant outside when he left the police station and saw appellant walk up to a black or navy blue Firebird. (Trial Tr. 157).
 {¶ 31} Appellant's longtime girlfriend and mother of his children, Amy Kohr, testified in his defense. She testified that after appellant was released from jail, they went directly to the police department so appellant could collect his belongings. (Trial Tr. 236). She stated they next went to the Bellaire Hospital, arriving at approximately 9:30. (Trial Tr. 238, 247). An x-ray taken of appellant revealed he was at the hospital at 10:31. (Trial Tr. 245-46). Ms. Kohr testified they then went to Todd Williams' house. (Trial Tr. 239). Ms. Kohr testified appellant was with her the entire evening after he was released from jail and they never drove up Central Avenue. (Trial Tr. 240-41). Ms. Kohr further testified that appellant did not have a blue shirt with him that night. (Trial Tr. 255). She stated appellant had a white shirt on and he did not have a change of clothes with him. (Trial Tr. 257).
 {¶ 32} Todd Williams, appellant's friend, testified that he went with Ms. Kohr to bond appellant out of jail. (Trial Tr. 225). He stated that when appellant was released from jail, he was wearing shorts and a shirt, which were identified at trial. (Trial Tr. 226). Williams testified he went home after appellant was released and that appellant, still wearing the same clothes, and Ms. Kohr later came to his house around 9:30 or 10:00 p.m. (Trial Tr. 227).
 {¶ 33} Given this evidence, one could draw the conclusion that while appellant was fleeing the police, he threw the bag of cocaine from his truck and then went back the next day to retrieve it. "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." State v. Jenks (1991), 61 Ohio St.3d 259, 272.
 {¶ 34} Although no direct evidence was presented that appellant had the bag of cocaine in his possession, such can be inferred. Appellant fled from the police. Appellant drove up Central Avenue in such a way that the driver's side was on the same side of the street as Mildred Duffy's house. (Trial Tr. 32). When appellant was in the 10 hundred block of Central Avenue, he turned off his lights. (Trial Tr. 32). Mrs. Duffy lived in the 10 hundred block of Central Avenue. (Trial Tr. 102). The police did not have a clear view of appellant during this time. (Trial Tr. 42).
 {¶ 35} Mrs. Duffy found a Ziploc bag containing a white substance in her yard around 5:30 p.m. the same day. (Trial Tr. 102-103). The substance in the bag was cocaine weighing 193.5 grams. (Trial Tr. 82-84, 88).
 {¶ 36} Appellant was released from jail at approximately 8:30 p.m. that night. (Trial Tr. 133-34). At approximately 9:00 p.m., Debbie Hall and Dorothy Hodgins saw a white man with long blonde hair wearing a blue shirt and white pants looking in Mrs. Duffy's yard. (Trial Tr. 171-72, 186, 189). They also saw a sporty, black car with a spoiler driving down the street. (Trial Tr. 171-72, 191-92). Appellant's girlfriend drives a black Firebird with a spoiler. (Trial Tr. 142-43, 157). Furthermore, although there was conflicting evidence as to what appellant was wearing that evening, evidence was presented that appellant was wearing a blue shirt and white pants. Finally, both women identified appellant as the man they saw that night. (Trial Tr. 173, 199-200).
 {¶ 37} When viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of possession of cocaine beyond a reasonable doubt. One could reasonably deduce that appellant threw the bag of cocaine from his vehicle while being chased by the police and went back after being released from jail to retrieve it. Furthermore, there is no indication that the jury clearly lost its way in evaluating the evidence. While conflicts in the testimony exist, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the jury. DeHass, 10 Ohio St.2d at paragraph one of the syllabus. Accordingly, appellant's first and second assignments of error are without merit.
 {¶ 38} Appellant's third assignment of error states:
 {¶ 39} "The state did not prove by a preponderance of the evidence that the money seized from Christopher Balwanz was used or going to be used in the commission of a criminal offense."
 {¶ 40} Appellant argues that appellee failed to prove by a preponderance of the evidence that the $5,385 found on his person was directly or indirectly related to a felony drug offense. He asserts he was convicted of possession of drugs, not trafficking in drugs, and there was no other evidence to connect the money to his conviction. Appellant also notes that he presented evidence that his father loaned him the money to purchase a carry-out store and he signed a promissory note to repay the money. (Trial Tr. 217, 234).
 {¶ 41} The criminal forfeiture statute provides, in pertinent part:
 {¶ 42} "[A] person who is convicted of or pleads guilty to a felony drug abuse offense, * * *, loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if either of the following applies:
 {¶ 43} "(a) The property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act.
 {¶ 44} "(b) The property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act." R.C. 2925.42(A)(1).
 {¶ 45} When a person is convicted of a felony drug abuse offense, the court shall hold a special proceeding to determine whether any property is subject to forfeiture. R.C.2925.42(B)(3)(a). The State must prove by a preponderance of the evidence that the property is subject to forfeiture. R.C.2925.42(B)(3)(a). A rebuttable presumption arises that any right, title, or interest of a person in property described in R.C.2925.42(A)(1) is subject to forfeiture, if the state proves both of the following by a preponderance of the evidence:
 {¶ 46} "(1) The right, title, or interest in the property was acquired by the offender during the period of the commission of the felony drug abuse offense * * *, or within a reasonable time after that period.
 {¶ 47} "(2) There is no likely source for the right, title, or interest in the property other than proceeds obtained from the commission of the felony drug abuse offense or act." R.C.2925.42(C).
 {¶ 48} When reviewing a judgment based on a preponderance of the evidence, we will not reverse the judgment if there is "some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280.
 {¶ 49} During the trial, appellant attempted to show that he might have another likely source for the money. Charles Balwanz, appellant's father, testified he loaned appellant and Amy Kohr $6,000 cash on July 28, 2000, the day before appellant was arrested. (Trial Tr. 217). Balwanz stated the money was for appellant to purchase a carry-out store. (Trial Tr. 218). Ms. Kohr also testified regarding the loan. (Trial Tr. 230-31). Balwanz testified he owns an amusement ride and does a lot of business in small cash; therefore, he gave appellant the money in small cash. (Trial Tr. 218). To evidence the loan, Balwanz referred to a note Amy prepared. (Trial Tr. 218-19). Ms. Kohr signed the noted and signed appellant's name to it. (Trial Tr. 219-220). She stated that Balwanz gave her the money but she did not feel comfortable carrying such a large sum of money so she gave it to appellant. (Trial Tr. 233).
 {¶ 50} In addition to the evidence of appellant's guilt discussed above, Chief Wallace testified at the forfeiture proceeding that drug sales are predominantly handled in cash. (Trial Tr. 308). He also testified that people who are involved in the drug trade carry large sums of cash in smaller denominations. (Trial Tr. 308). Finally, Chief Wallace testified that appellant has prior convictions in other jurisdictions for drug offenses. (Trial Tr. 308-309). Additionally, Ms. Kohr testified that she gave appellant $6,000 from his father. But when the police apprehended appellant he had $5,385. No testimony was given by Ms. Kohr or appellant as to where the other $615 went within that one day.
 {¶ 51} Appellee only had to prove by a preponderance of the evidence that appellant acquired the money during the commission of the offense, or reasonably thereafter, and that there was no likely source for appellant's right to the money other than proceeds obtained from the commission of the felony drug abuse offense. Given the burden of proof, appellee presented enough evidence to support the forfeiture. Therefore, appellant's third assignment of error is without merit.
 {¶ 52} Appellant's fourth assignment of error states:
 {¶ 53} "The trial court erred when it gave improper jury instructions at Christopher Balwanz's criminal forfeiture hearing."
 {¶ 54} Appellant takes issue with the following instruction at his forfeiture hearing:
 {¶ 55} "You will return a verdict of forfeiture if you find by the greater weight of the evidence that the currency totaling $5,385 constituted and/or was derived directly or indirectly from any proceeds that the defendant obtained directly or indirectly from the commission of trafficking in cocaine." (Emphasis added). (Trial Tr. 302-303).
 {¶ 56} He contends that since he was convicted ofpossession of cocaine and not trafficking in cocaine, this instruction was prejudicial. Therefore, he argues, he is entitled to a new forfeiture hearing.
 {¶ 57} Appellant did not object to the jury instruction. Absent plain error, the failure to object to a jury instruction constitutes a waiver of the issue on appeal. State v. Underwood
(1983), 3 Ohio St.3d 12, syllabus; Crim.R. 30. Plain error should be invoked only to prevent a clear miscarriage of justice. Id. at 14. Plain error is one in which but for the error, the outcome would have been different. State v. Long (1978),53 Ohio St.2d 91, 97.
 {¶ 58} In examining the trial court's jury instructions we must review the court's charge as a whole, not in isolation, in determining whether the jury was properly instructed. State v.Burchfield (1993), 66 Ohio St.3d 261, 262.
 {¶ 59} Nothing on the record indicates that had the court stated "possession" instead of "trafficking" in the jury instruction the outcome of the forfeiture hearing would have been different. Before the court accidentally said "trafficking," it instructed the jury, "[t]he defendant has been found guilty ofdrug possession, to wit: Cocaine, in an amount more than 100 grams but less than 500 grams." (Emphasis added). (Trial Tr. 302). Thus, the court was clear what appellant was guilty of. Next, the court gave the allegedly prejudicial instruction. Then the court continued, instructing the jury regarding preponderance of the evidence and how to consider the evidence. (Trial Tr. 303).
 {¶ 60} The jury knew better than anyone what appellant was convicted of. They convicted him. They listened to the evidence and knew what appellant was charged with. Therefore, it seems highly unlikely that the court's mistake in saying "trafficking" instead of "possession" would have made any difference in the jury's determination of forfeiture. Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 61} Appellant's fifth assignment of error states:
 {¶ 62} "Christopher Balwanz's right to the effective assistance of counsel guaranteed under Sections 10 and 16, Article I of the Ohio Constitution, and the Sixth andFourteenth Amendments to the United States Constitution, was denied when trial counsel failed to move for a mistrial when Patrolman Busack, a State's witness, testified that Mr. Balwanz was a `known drug dealer' and failed to object to defective jury instructions."
 {¶ 63} Appellant argues that his trial counsel was ineffective for two reasons. First, he bases his argument on the fact that counsel failed to move for a mistrial when Officer Busack testified, "Well, Mr. Balwanz is a known drug dealer." (Trial Tr. 61). He asserts that counsel's objection and the trial court's instruction to the jury to disregard the statement did not relieve him of the prejudice the statement had already caused. He also contends that the statement prejudiced him later in his forfeiture hearing. Second, appellant contends counsel was ineffective for failing to object to the jury instruction at the forfeiture hearing regarding "trafficking" in cocaine.
 {¶ 64} Additionally, appellant filed a "pro-se, motion for leave to file supplemental/amended authority to defendant-appellant's brief assignment of error number V. of the original brief filed May 19, 2003." In this filing, appellant alleges his counsel was also ineffective for failing to file "a motion to suppress evidence violative of the Sixth andFourteenth Amendments to the United States Constitution." However, appellant never tells us what evidence he is referring to. Appellant rambles on about probable cause, no evidence, and bad faith. The best that can be gathered is that appellant is arguing his counsel should have moved to suppress the cocaine.
 {¶ 65} But this court should not be forced to play guessing games when it comes to appellant's assignments of error. In this case, appellant is represented by competent counsel who has articulately raised and argued ineffective assistance of counsel as an assignment of error. We will proceed with this assignment of error accordingly.
 {¶ 66} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation.Strickland v. Washington (1984), 466 U.S. 668, 687; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 67} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999),86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 68} Appellant's counsel was not ineffective. Officer Busack's comment about appellant being a "known drug dealer" was improper. However, counsel immediately objected and asked the court to instruct the jury to disregard the statement. (Trial Tr. 61). The trial court did just that. In fact, the court even asked the jury if they would be able to put the statement out of their minds. (Trial Tr. 61). Additionally, after the jury returned a guilty verdict, appellant's counsel made a motion for judgment notwithstanding the verdict. (Trial Tr. 316). Among the reasons he articulated in support of the motion was Officer Busack's comment. (Trial Tr. 319). Counsel told the court, "[t]hat was very prejudicial and I very seriously considered at that time making a motion for a mistrial because I feel it was so prejudicial, and damaging and improper. But, there were other considerations in the case and I ultimately made the decision not to, not to ask for a mistrial, to let the trial go on." (Trial Tr. 319). These comments demonstrate the decision not to move for a mistrial was part of counsel's trial strategy. A reviewing court should refrain from second-guessing an attorney's trial strategy. State v. Carter (1995), 72 Ohio St.3d 545, 558.
 {¶ 69} As to counsel's failure to object to the "trafficking" jury instruction, we have already reviewed the court's error in misstating appellant's offense and concluded it was not prejudicial to appellant.
 {¶ 70} Furthermore, after analyzing all of the evidence presented at trial, appellant cannot meet Strickland's second prong. The jury's verdict was supported by competent, credible evidence. Whether appellant's counsel had proceeded differently, it would not have altered the outcome of the case. Hence, appellant's fifth assignment of error is without merit.
 {¶ 71} Appellant's sixth assignment of error states:
 {¶ 72} "The trial court erred in sentencing Christopher Balwanz to consecutive terms in prison, thereby denying him due process as provided by the fifth and fourteenth amendments to the united states constitution, and Cection 16, Article I of the ohio constitution."
 {¶ 73} Appellant alleges the trial court erred in failing to make the necessary findings on the record to support consecutive sentences. Citing, State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165. Appellant concedes that the court made the required findings to sentence him to maximum prison terms.
 {¶ 74} The court sentenced appellant to consecutive prison terms of 18 months and eight years for a total of nine and a half years.
 {¶ 75} In order to impose consecutive sentences the court must make certain findings and give reasons supporting those findings at the sentencing hearing. Comer, 99 Ohio St.3d at paragraph one of the syllabus. A court may impose consecutive sentences upon an offender if the court finds three statutory factors: (1) that consecutive sentences are necessary to punish the offender or protect the public from future crime; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the enumerated circumstances found in R.C. 2929.14(E)(4)(a) through (c) exists.[1] Id. at ¶ 13; R.C. 2929.14(E)(4). Additionally, the sentencing court must comply with R.C. 2929.19(B). Comer, 99 Ohio St.3d at ¶ 14. According to R.C. 2929.19(B)(2)(c), the court must "make a finding that gives its reasons for selecting the sentence imposed" if it imposes consecutive sentences.
 {¶ 76} In the present case, the trial court failed to make the necessary findings at the sentencing hearing. The court did make some findings. It found that appellant's case was the worst case of fleeing and alluding that the court had seen. (Sentencing Tr. 6). It also found that appellant had not admitted he was guilty or expressed any remorse. (Sentencing Tr. 7). The court concluded that anything less than the maximum sentences would demean the seriousness of the offenses. (Sentencing Tr. 7). Additionally, the court considered appellant's criminal drug history including convictions on offenses including marijuana and LSD and his outstanding warrants for cocaine possession in New Jersey. (Sentencing Tr. 7). These findings, however, were not sufficient to comply with the mandates of Comer, R.C.2929.14(E), and R.C. 2929.19(B). The court failed to find that consecutive sentences were necessary to punish appellant or protect the public from future crime or that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger appellant poses to the public. The court also failed to find that one of the R.C.2929.14(E)(4)(a) through (c) factors applied. Furthermore, while the court stated several times its reasons for imposing maximum sentences, it never once mentioned reasons for imposing consecutive sentences.
 {¶ 77} Accordingly, appellant's sixth assignment of error has merit.
 {¶ 78} For the reasons stated above, appellant's convictions and forfeiture are hereby affirmed, his sentence is vacated, and this case is remanded to the trial court for resentencing.
Waite, P.J., and Vukovich, J., concur.
[1] The enumerated circumstances are:
{¶ a} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or2929.18 of the Revised Code, or was under post-release control for a prior offense.
{¶ b} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
{¶ c} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C.2929.14(E)(4).