OPINION
{¶ 1} Defendant-appellant, Brian Lee Harris, appeals his conviction in the Butler County Court of Common Pleas for one count of possession of cocaine, one count of having weapons under disability, one count of possession of marijuana, and one count of driving under suspension. Appellant contends that the trial count erred in its denial of his motion to suppress evidence obtained during and after the course of an investigatory stop and that the trial court's order for forfeiture of $5,439 cash was against the manifest weight of the *Page 2 
evidence. We affirm the trial court's decision.
 {¶ 2} On April 13, 2006, Middletown Police Officer Brad Carrozza responded to a dispatch call regarding a suspicious van sitting in the parking lot of the Store `N' Lock facility located in Middletown. At approximately 11:00 p.m., Carrozza entered the storage premises by inputting the code provided by dispatchers, and pulled behind a gray mini van. Carrozza witnessed Harris sitting in the driver's seat of the van and activated his overhead lights to alert him. At that time, Harris exited the van and walked towards Carrozza who also exited his police cruiser and the two engaged in a conversation.
 {¶ 3} As Carrozza got close enough to request Harris' identification, he detected a strong odor of marijuana emanating from Harris' person. During this initial interaction, another Middletown officer, Chris Winters, pulled up and approached the two men. Upon running Harris' information, Carrozza and Winters learned that Harris' license was under suspension. When asked why he was in the parking lot, Harris claimed that he had pulled in to use the phone and then told the officers that he rented unit 819, which was in close proximity to the parked van.
 {¶ 4} After confirming that Harris' driving privileges were suspended, Carrozza arrested Harris and asked him if he had any illegal items on his person. Harris then admitted that he had a small "bag of weed" in his pocket. After removing the marijuana from Harris' left pocket, as well as cash totaling $639, Carrozza placed Harris in the back of his patrol car. At that time, Winters approached the van and detected a strong odor of marijuana coming from the vehicle and also saw a large wad of money, which he subsequently learned totaled $4,800, in a clear plastic bag between the seats of the van.
 {¶ 5} The officers then contacted Canine Officer, Vince Lovejoy, and his partner, Ki, a highly trained "aggressive-alert" dog. Upon arrival, Lovejoy and Ki walked around the van and Ki alerted to the outside of the driver's door and on the inside at the bag of money located *Page 3 Butler CA2007-04-089 between the seats. Lovejoy then directed Ki up and down the row of storage units. Ki alerted when he passed unit 819, specifically clawing and biting at the unit door's handle. At that point, the officers contacted their supervisor to arrange for a search warrant. As affiant on the search warrant, Carrozza provided the magistrate with the details of the investigative stop, the odor of marijuana on Harris' person and in his van, as well as Ki's alert on the van and on unit 819.
 {¶ 6} A search warrant was issued and immediately executed by the Middletown police who, upon opening the unit, found a 1997 Lincoln Continental. Inside the Lincoln's glove compartment, officers found a plastic bag containing crack cocaine, a digital scale, as well as various paperwork. Officers also found a gun lying in the right corner of the unit. Subsequently, police were granted a warrant to search Harris' home. Upon execution, officers located additional paperwork that linked the Lincoln Continental to Harris.
 {¶ 7} Harris filed a motion to suppress the evidence seized from the storage unit and his home, contending that having Ki sniff the storage units without a search warrant violated his Fourth Amendment rights. At a hearing on the motion, Officers Carrozza and Lovejoy testified to the events that surrounded Harris' arrest and the subsequent search and seizures which resulted.
 {¶ 8} The trial court overruled Harris' motion to suppress and the State presented the evidence to the jury at a trial held on February 15, 2007. The jury found Harris guilty on all counts and the trial judge sentenced him to seven years in prison, and later ordered the cash seized from the van and from Harris' person to be forfeited according to R.C. 2925.42. Harris now appeals his convictions and the forfeiture asserting two assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS EVIDENCE." *Page 4 
 {¶ 11} Harris argues that the trial court erred in overruling his motion to suppress because the police did not have a search warrant when Officer Lovejoy directed Ki to sniff the storage units.[1]
Specifically, Harris contends that he had a reasonable expectation of privacy in the storage unit and his Fourth Amendment right protecting him from unreasonable searches and seizures was violated because Ki's sniff of the storage units was unreasonable under the circumstances. By extension, he argues the fact that Ki alerted on the storage door should not have been used by the police when applying for the search warrant and therefore all evidence obtained after, and as a result of, Ki's sniff of Harris' storage unit should have been suppressed. Essentially, Harris contends that without Ki's alert, the police would have lacked the probable cause necessary to procure the search warrant which authorized police to search the storage unit and seize the cocaine and gun found therein.
 {¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Cochran, Preble App. No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. Id. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Oatis, Butler App. No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." Cochran at ¶ 12.
 {¶ 13} The Fourth Amendment to the United States Constitution protects individuals *Page 5 Butler CA2007-04-089 from unreasonable governmental searches and seizures. United States v. Hensley (1985), 469 U.S. 221, 105 S.Ct. 675. "A `search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v.Jacobsen (1984), 466 U.S. 109, 113, 104 S.Ct. 1652. State conduct that does not compromise any reasonable expectation of privacy is not a search subject to the Fourth Amendment. Illinois v. Caballes (2005),543 U.S. 405, 125 S.Ct. 834.
 {¶ 14} The United States Supreme Court has held that a canine sniff does not intrude on a person's reasonable expectation of privacy.United States v. Place (1983), 462 U.S. 696, 103 S.Ct. 2637. "As long as the observing person or the sniffing canine are legally present at their vantage when their respective senses are aroused by obviously incrim inating evidence, a search within the meaning of the Fourth Amendment has not occurred." United States v. Reed (C.A.6, 1998), 141 F.3d 644,649.
 {¶ 15} Additionally, a dog sniff does not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringes on a person's constitutionally protected privacy interest. Caballes. Any interest in possessing contraband cannot be deemed reasonable and thus, state action that merely reveals the possession of contraband does not compromise any legitimate privacy interest. Id. Therefore, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Id. at 410.
 {¶ 16} Ohio recognizes two types of lawful traffic stops; a noninvestigatory stop in which the officer believes a traffic violation has occurred, and an investigatory stop. Cochran, CA2006-10-023 at ¶ 13. When conducting an investigatory traffic stop of a vehicle, as in this case, an officer may detain the vehicle in order to investigate a reasonable and articulable suspicion of criminal activity. Id. at ¶ 14. Even absent reasonable suspicion of drug-related *Page 6 
activity, once lawfully detained, a vehicle's exterior may be subjected to a canine sniff. State v. Howard, Preble App. Nos. CA2006-02-002, CA2006-02-003, 2006-Ohio-5656. If the dog alerts to a drug odor on the outside of the vehicle, the police then have probable cause to search the interior for contraband. Id. at ¶ 17.
 {¶ 17} Here, the trial court determined that Officers Lovejoy and Ki were legally present on the premises before Ki alerted on the storage unit door. After reviewing the record, we find no error in the trial court's conclusion. Officer Carrozza responded to a call regarding a suspicious van and upon arrival, engaged in a lawful investigatory traffic stop, one that Harris does not challenge. Upon smelling the strong marijuana odor emanating from Harris' person, Carrozza properly investigated his reasonable and articulable suspicion of criminal activity by calling in Lovejoy and Ki to sniff the car. After Ki alerted to the driver-side door, the police had sufficient probable cause to continue to search the vehicle for contraband and their presence on the premises continued to be lawful.
 {¶ 18} Additionally, the trial court determined that Ki was lawfully in the area of the storage units themselves. Specifically, the court found "the area in front of unit 819 is an area open to the public, to those who properly have the code to get through the gate, and the police properly have the code to go through the gate. Therefore, Ki, the canine partner of Officer Lovejoy, had a right to be there in that public area. Ki was using his olfactory faculties — I suppose the way he is trained to do — and indicated the presence of contraband, narcotic contraband or some kind of drug contraband in that location." We find no error in this conclusion.
 {¶ 19} The area in front of the storage unit was open to anyone who had access to the facility via their pass code, which included Officers Lovejoy and Ki. Once legally present, Ki's senses were aroused by the odor of drug-related contraband as indicated by Ki clawing and biting at the unit door. This canine alert merely indicated the location of contraband that *Page 7 
Harris had no right to possess in the first place and was reasonable under the circumstances. Because Harris had no reasonable expectation of privacy in the possession of his cocaine and other contraband, and because a sniff and alert indicating the location of contraband by a dog legally on the premises is not a search within the meaning of theFourth Amendment, Ki's sniff and alert on unit 819 without a search warrant did not violate Harris' rights.
 {¶ 20} Accordingly, we find the trial court correctly denied Harris' motion to suppress when it found that Lovejoy and Ki were lawfully on the premises and that the sniff and alert provided proper evidence to support the issuance of a search warrant. Harris' first assignment of error is therefore overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT'S VERDICT OF FORFEITURE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} Harris argues that the trial court's order of forfeiture of $5,439 cash seized from his person and the van was against the manifest weight of the evidence. Specifically, Harris claims that he was convicted of possession, and not trafficking, of cocaine so that there is no way to connect the cash to his convictions. Harris also contends that the state failed to prove by a preponderance of the evidence that the cash was used, or intended to be used, in the commission or facilitation of the drug offense for which he was convicted.
 {¶ 24} A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the trial court's findings of fact and conclusions of law are based on competent, credible evidence.Bales v. Miami University, Butler App. No. 2006-11-295, 2007-Ohio-6032. Because the trier of fact is best able to assess and evaluate the witnesses' credibility by observing their demeanor and gestures, an appellate court must give deference to the trial court's determination regarding the weight to be given to presented evidence and the credibility of the witnesses. Id. *Page 8 
 {¶ 25} R.C. 2925.42 governs the forfeiture of property in connection with felony drug abuse offenses or acts.[2] According to the statute, "any person who is convicted of or pleads guilty to a felony drug abuse offense loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if either of the following applies: (a) The property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act. (b) The property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act." R.C. 2925.42(A)(1).
 {¶ 26} At a criminal forfeiture hearing, the state must prove by a preponderance of the evidence that the property seized from the defendant is subject to forfeiture. State v. Balwanz, Belmont App. No. 02-BE-37, 2004-Ohio-1534. "A rebuttable presumption arises that any right, title, or interest of a person in property described in R.C. 2925.42(A)(1) is subject to forfeiture, if the state proves both of the following by a preponderance of the evidence: `(1) The right, title or interest in the property was acquired by the offender during the period of the commission of the felony drug abuse offense * * *, or within a reasonable time after that period. (2) There is no likely source for the right, title, or interest in the property other than proceeds obtained from the commission of the felony drug abuse offense or act.'" Id. at ¶ 45-47, quoting R.C. 2925.42(C).
 {¶ 27} The trial court determined that an indirect relationship existed between the commission of the felony drug offense and the cash taken from Harris' person and van. Specifically, the amount of money seized, $5,439, was too great an amount to be connected *Page 9 
to the sale or use of marijuana and instead, was more likely associated with Harris' possession of crack cocaine for which he was convicted. The court reasoned that while Harris was not convicted of trafficking, an indirect relationship existed between Harris' cocaine possession and the money. Additionally, the court held that because the cash had an indirect connection to the cocaine, it was likely derived from proceeds obtained indirectly from the possession of the drugs found in the storage unit.
 {¶ 28} In addition to the close proximity of the cash to the drugs, Officer Lovejoy offered credible testimony that his partner, Ki, alerted to the bag of money which contained $4800. An alert from a highly-trained narcotic detection dog demonstrates a tangible connection between the cash and the drugs. Additionally, during the forfeiture hearing, Harris offered no explanation as to where the money came from and did not explain why the police found a digital scale in his glove compartment along with the crack cocaine.
 {¶ 29} Given that the state only had to prove by a preponderance of the evidence that Harris acquired the money during or after the commission of his cocaine offense, and that there was no likely source of Harris' $5,439 other than proceeds obtained from his felony drug possession, the state presented enough evidence to support the forfeiture order.
 {¶ 30} After a thorough review of the record, we find that the forfeiture order was supported by credible and competent evidence, and consequently, not against the manifest weight of the evidence. Therefore, Harris' second assignment of error is overruled.
 {¶ 31} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] Harris does not contest the initial traffic stop by Officer Carrozza, the seizure of marijuana and money from his person, nor the use of Ki to search the van. His sole focus of this appeal is on the events occurring after Ki searched the van, specifically when Lovejoy and Ki walked up and down the row of storage units without first obtaining a search warrant.
[2] Effective July 1, 2007, Ohio Legislators significantly altered the law relating to drug forfeiture by adopting R.C. Chapter 2981 titled "Forfeiture Law." References to R.C. 2925.42 in this decision are to the superseded statute still in effect at the February 2007 trial. *Page 1