OPINION
{¶ 1} Appellant, Isaac Cochran, appeals the judgment of the Preble County Court of Common Pleas denying his motion to suppress evidence seized during a search of his vehicle. We affirm.
 {¶ 2} In the early morning hours of May 19, 2006, Trooper Vongsy of the Ohio State Highway Patrol was contacted by an off-duty state trooper, Shawn Smart, indicating a vehicle traveling eastbound on Interstate 70 near the Indiana-Ohio border was being driven in an erratic manner. Trooper Smart advised that he observed the suspect vehicle slow down well *Page 2 
below the posted speed limit and veer into the right lane every time it passed a marked police unit, in what appeared to be an effort to hide from police.
 {¶ 3} Approximately 20 minutes after receiving this tip, Trooper Vongsy observed the vehicle, which was being driven by appellant, traveling east on Interstate 70 through Preble County, following a commercial semi tractor-trailer too closely. He proceeded to follow the vehicle for approximately 100 yards, during which he observed the vehicle being driven 60 miles per hour while following the tractor-trailer by one and a half car lengths. Therefore, at approximately 2:34 a.m., Trooper Vongsy initiated a traffic stop of the vehicle.
 {¶ 4} After stopping the vehicle, Trooper Vongsy approached appellant, requested his driver's license and vehicle registration, and asked appellant a series of questions concerning his travels. Thereafter, approximately seven to eight minutes after the stop, Trooper Vongsy returned to his police vehicle to run a license, registration, wants and warrants check. Trooper Vongsy received responsive information between 2:45 and 3:00 a.m. indicating appellant's license and registration were valid and that appellant had no outstanding warrants. At the time he ran the license, registration, wants and warrants check, Trooper Vongsy also requested that a canine unit be dispatched to the scene because his initial encounter with appellant caused him to believe appellant was under the influence of drugs and/or alcohol.
 {¶ 5} Trooper Vongsy then approached appellant's vehicle for a second time and asked appellant to exit the vehicle and to sit in the rear of his police vehicle. Trooper Vongsy's purpose in doing so was to ask appellant questions regarding his relationship with a male passenger traveling with him. A second state trooper, Randy Lewis, who had arrived on the scene approximately four minutes after the stop, spoke with the passenger while Trooper Vongsy questioned appellant. Trooper Lewis relayed the passenger's statements to Trooper Vongsy, indicating a different account as to how the two men knew each other than appellant provided to Trooper Vongsy. *Page 3 
 {¶ 6} At approximately 3:02 a.m., 28 minutes after the stop, Trooper Smart arrived on the scene with a canine and proceeded to walk around appellant's vehicle. The canine alerted to the right rear compartment of appellant's vehicle, prompting a probable cause search[1] of the vehicle which yielded a small bag of marijuana and a small bag of methamphetamine. Appellant was later charged with one fifth-degree felony count of possession of drugs in violation of R.C.2925.11(A)(C)(1)(a), one minor misdemeanor count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a) and one fourth-degree misdemeanor count of possession of drug paraphernalia in violation of R.C. 2925.14(A)(13)(C)(1).
 {¶ 7} Prior to trial, appellant filed a motion to suppress the evidence seized during the search of his vehicle, arguing Trooper Vongsy did not have reasonable suspicion to initiate the traffic stop. Following a hearing on September 20, 2006, the trial court denied appellant's motion. Appellant was later convicted on all counts, and sentenced to two years of non-reporting community control, ten days in jail ordered to pay a $100 fine. Appellant's license was also suspended for a period of six months.
 {¶ 8} Appellant appeals the trial court's decision denying his motion to suppress, raising two assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED AS A MATTER OF FACT AND LAW WHEN IT DETERMINED THAT THE INITIAL TRAFFIC STOP OF THE APPELLANT WAS BASED ON ARTICULABLE FACTS GIVING RISE TO REASONABLE SUSPICION THAT THE APPELLANT HAD COMMITTED A TRAFFIC VIOALATION."
 {¶ 11} In his first assignment of error, appellant argues the trial court erred in denying *Page 4 
his motion to suppress evidence seized during the search of his vehicle because Trooper Vongsy lacked reasonable suspicion to stop appellant for a traffic violation. Appellant contends that neither the tip of off-duty trooper Shawn Smart that appellant was driving erratically, nor Trooper Vongsy's own observation of appellant following a tractor-trailer too closely, supports a finding of reasonable suspicion that appellant committed a traffic violation. We disagree.
 {¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Wilson, Warren App. No. 2006-01-007, 2007-Ohio-2298, ¶ 12, citing State v. LeClair, Clinton App. No. CA2005-11-027, 2006-Ohio-4958, ¶ 6. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. Id. As such, a reviewing court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. Id. An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. Id.
 {¶ 13} As this court has previously explained, two different types of "traffic" stops are recognized in Ohio, each with a different constitutional standard applicable to it. See State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, at 3. A noninvestigatory stop is reasonable for Fourth Amendment purposes where an officer has probable cause to believe a traffic violation has occurred, such as where the officer observes a traffic violation. See Whren v. United States (1996),517 U.S. 806, 810, 116 S.Ct. 1769; Dayton v. Erickson, 76 Ohio St.3d 3,11, 1996-Ohio-431.
 {¶ 14} An investigatory stop, on the other hand, allows an officer to briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to *Page 5 
investigate a reasonable and articulable suspicion of criminal activity. See Terry v. Ohio (1967), 392 U.S. 1, 19-21, 188 S.Ct. 1868; State v.Bobo (1988), 37 Ohio St.3d 177, 178. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances" as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." LeClaire at ¶ 9, quoting State v. Freeman (1980),64 Ohio St.2d 291, syllabus, and Bobo at 179. Significantly, "[a] telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." Maumee v.Weisner (1999), 87 Ohio St.3d 295, paragraph 2 of the syllabus,1999-Ohio-68.
 {¶ 15} Here, the trial court determined Trooper Vongsy had reasonable suspicion justifying an investigative stop of appellant's vehicle based upon a tip provided to him by off-duty highway patrolman, Trooper Smart. Trooper Vongsy testified that he was contacted by Trooper Smart prior to initiating the traffic stop indicating that appellant was driving in an erratic manner on eastbound Interstate 70. Specifically, Trooper Smart indicated he observed appellant's vehicle slow down drastically, to approximately 40 to 45 miles per hour where the posted limit was 70 miles per hour, and veer into the right lane every time it approached a marked police unit. Appellant appeared to be hiding from police in doing so, and would "dart in and out of traffic" once he passed a particular police unit.
 {¶ 16} After reviewing the record, we find no error in the trial court's conclusion that Trooper Vongsy was justified in stopping appellant based upon the tip he received from Trooper Smart. As an initial matter, appellant does not dispute the tip contained sufficient indicia of reliability. Moreover, despite appellant's contentions otherwise, the record demonstrates the tip contained specific facts based upon Trooper Smart's eyewitness account of appellant's driving to justify a reasonable suspicion that appellant was engaged in criminal activity, such as a driving while under the influence of alcohol or drugs offense. *Page 6 
Trooper Smart relayed his observations of appellant slowing down drastically, "hiding" behind other vehicles and "darting" in and out of traffic, immediately after observing this behavior and from the perspective of a fellow motorist traveling along the same roadway as appellant during the early morning hours.[2] We find that a reasonable police officer could suspect that criminal activity was taking place based upon these facts, and that there was sufficient justification for an investigative stop.
 {¶ 17} In addition, in finding the stop was justified, the court noted that Trooper Vongsy personally observed appellant's vehicle following a tractor-trailer too closely. Trooper Vongsy testified he followed appellant for approximately 100 yards before signaling him to pull over, during which he observed appellant following the tractor-trailer by a distance of approximately one and a half car lengths while driving approximately 60 miles per hour. He testified that the appropriate distance between vehicles for this rate of speed is six car lengths.[3] While appellant testified that he followed the tractor-trailer by four to five car lengths, and argued Trooper Vongsy's observation was not accurate because it was made from behind appellant's vehicle, the trial court found Trooper Vongsy's testimony credible and stated that his observation "would also be justification to stop."[4]
 {¶ 18} Based upon Trooper Vongsy's testimony, we find the trial court could conclude the traffic stop was properly initiated where Trooper Vongsy observed the traffic violation of following too closely. The fact Trooper Vongsy may have been "looking for a violation so that *Page 7 
he could stop * * * appellant's vehicle," as appellant emphasizes, is without consequence. See Erickson, 76 Ohio St.3d 3, 1996-Ohio-431, syllabus, ("Where a police officer stops a vehicle based upon probable cause a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment * * * even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.")
 {¶ 19} Accordingly, we find the trial court correctly denied appellant's motion to suppress when it found the traffic stop was justified based upon Trooper Smart's tip, along with Trooper Vongsy's personal observation of a traffic violation. Appellant's first assignment of error is therefore overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE DETENTION OF THE APPELLANT FROM THE INITIAL TRAFFIC STOP UNTIL WHEN THE DRUG SNIFFING CANINE ALERTED TO THE APPELLANT'S VEHICLE WAS NOT UNREASONABLE."
 {¶ 22} In his second assignment of error, appellant argues the trial court erred in denying his motion to suppress because he was detained beyond the timeframe necessary to issue a ticket or warning and run a license check. We disagree.
 {¶ 23} This court has previously held that in conducting a stop of a motor vehicle for a traffic violation, an "officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped."State v. Howard, Preble App. Nos. CA2006-02-002, CA2006-02-003, 2006-Ohio-5656, ¶ 14, quoting State v. Cahill, Shelby App. No. 17-01-19, 2002-Ohio-4459, at ¶ 21. An investigative stop, however, may last no longer than is necessary to effectuate the purpose of the stop. Id.
 {¶ 24} "When detaining a motorist for a traffic violation, an officer may delay the *Page 8 
motorist for a time period sufficient to issue a ticket or a warning."State v. Batchili, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12, quotingHoward at ¶ 15. This time period also "includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." Id., quoting Howard at ¶ 15;State v. Bolden, Preble App. No. CA2003-03-007, 2004-Ohio-184, ¶ 17. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." Howard at ¶ 15, quotingState v. Carlson (1995), 102 Ohio App.3d 585, 598-599.
 {¶ 25} The detention of a stopped motorist, however, "may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." Batchili
at ¶ 12, quoting Howard at ¶ 16. Moreover, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity.Howard at ¶ 17; State v. Rusnak (1997), 120 Ohio App.3d 24, 28. Ohio courts, along with the United States Supreme Court, have determined "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." Id., quoting United States v. Place (1983), 462 U.S. 696,103 S.Ct. 2637. Therefore, a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. Id. Further, if a trained narcotics dog "alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." Id., quoting Cahill, 2002-Ohio-4459 at ¶ 22.
 {¶ 26} This court has previously found that an up to 30-minute period of detainment from the time of an initial stop to the time a canine alerts is reasonable. See State v. Bolden, Preble App. No. CA2003-03-007, 2004-Ohio-184, ¶ 19-25. Here, the record demonstrates the *Page 9 
time between the initial stop and the time the canine alerted was 28 minutes. The record indicates Trooper Vongsy initiated the traffic stop at approximately 2:34 a.m., ran a license, registration, wants and warrants check approximately seven to eight minutes later, and received responsive information between 2:45 and 3:00 a.m. The canine arrived at the scene at approximately 3:02 a.m., 28 minutes after the initial stop, and alerted seconds thereafter. Significantly, Trooper Vongsy testified he was in his police vehicle writing appellant a citation for following too closely at the time the canine alerted.
 {¶ 27} While Trooper Vongsy indicated a normal traffic stop typically lasts between 15 and 20 minutes, he testified that appellant's demeanor and physical appearance during their initial encounter suggested appellant may be under the influence of drugs and/or alcohol, prompting him to request a canine unit to be dispatched to the scene. Specifically, Trooper Vongsy testified that appellant was "extremely nervous," avoided eye-contact, "fumbled" through his wallet several times while handing over his driver's license, and had to be reminded a number of times to produce his vehicle registration. Trooper Vongsy also observed that appellant's eyes were blood-shot and glassy, that he spoke very slowly, and that he was unsteady on his feet when he exited his vehicle upon Trooper Vongsy's request. Although he did not detect an odor of alcohol, Trooper Vongsy testified these indicators caused him to believe appellant may have been under the influence of drugs, especially in light of the fact the stop was initiated at a "typical OVI time."
 {¶ 28} Additionally, the record indicates that after Trooper Vongsy questioned appellant regarding his relationship with his passenger, he was provided a different account of such relationship by Trooper Lewis, who had interviewed the passenger. Appellant indicated the two men had known each other for six months while the passenger indicated they had known each other since childhood. The trial court noted such inconsistencies may well have been a miscommunication or misunderstanding based upon testimony presented during the motion to *Page 10 
suppress hearing. Nevertheless, such inconsistencies viewed in light of all other circumstances at the time of the stop could provide a police officer with a reasonable suspicion that criminal activity beyond that which prompted the initial stop was taking place.
 {¶ 29} Based upon these facts, the trial court found, and we agree, that Trooper Vongsy did not detain appellant for an unreasonable period of time. Therefore, we find the trial court correctly denied appellant's motion to suppress evidence seized during the search of appellant's vehicle. Appellant's second assignment of error is overruled.
 {¶ 30} Judgment affirmed.
YOUNG, P.J. and BRESSLER, J., concur.
[1] Appellant does not challenge the probable cause search itself in this appeal.
[2] The Ohio Supreme Court has previously found similar facts to be "trustworthy and of significant weight" in determining whether a tip is sufficient to justify an investigative stop based upon reasonable suspicion. See Maumee, 87 Ohio St.3d at 302-303, 1999-Ohio-68.
[3] Pursuant to R.C. 4511.34(A), "the operator of a motor vehicle * * * shall not follow another vehicle * * * more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway." R.C. 4511.34(B) provides that a violation of this section is a minor misdemeanor.
[4] In ruling on appellant's motion to suppress, and after discussing the discrepancies in the witnesses' accounts of the distance by which appellant was following the tractor-trailer, the court stated: "If the court had to make a decision, I think the court would say I can't think of any reason why the officer would make this up. So I think he had the basis to stop the vehicle on the basis of the observed traffic violation of following too closely." *Page 1