[Cite as *State v. Schmidbauer*, 2013-Ohio-530.]

MIN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2012-08-061 |
| | : | O P I N I O N |
| - vs - | | 2/19/2013 |
| | : | |
| DEBORAH L. SCHMIDBAUER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2012 TRC 01471

D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 North Third Street, Batavia, Ohio 45103, for plaintiff-appellee

Gary A. Rosenhoffer, 313 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Deborah Schmidbauer, appeals her conviction in the Clermont County Municipal Court, Traffic Division, for operating a vehicle while under the influence of alcohol (OVI).

{¶ 2}  On January 27, 2012, David Bishop, the manager of the local Kroger grocery store, phoned police dispatch to report that one of the store's customers drove away from the store while she was visibly intoxicated.  Bishop explained that a woman, later identified as

Schmidbauer, was seen purchasing and drinking alcohol at Kroger. Bishop stated that Schmidbauer was consuming alcohol in the store and that when he made contact with her in the ladies' restroom, he noticed that she had urinated herself. Bishop followed Schmidbauer to her car, and tried in vain to stop her from driving. Bishop called the police, and gave them a description of Schmidbauer's car, including the license plate number. Bishop also explained that Schmidbauer had difficulty starting her car and operating the vehicle, and that he watched her pull out through the parking lot and had observed Schmidbauer driving erratically. Within three minutes of Bishop's phone call, Officer James McFarland of the Goshen Township Police Department received a notice from police dispatch to look for Schmidbauer's car.

{¶ 3} Shortly after the dispatch, Officer McFarland located Schmidbauer's car stopped at a light and performed a stop. Once Officer McFarland approached Schmidbauer, he observed that her eyes were bloodshot and glassy, that there was an odor of alcoholic beverages emanating from her car, and that Schmidbauer appeared confused. Officer McFarland also noticed that Schmidbauer's pants were wet, and that it appeared that she had urinated herself. Officer McFarland directed Schmidbauer out of the car, and she had difficulty maintaining her balance when she exited. Schmidbauer also stumbled when she walked.

{¶ 4} Schmidbauer admitted to consuming alcohol, but would not state how much. Officer McFarland attempted to perform field sobriety tests, but Schmidbauer refused and claimed that she had a foot injury that would not allow her to balance long enough for the walk-and-turn or one-leg stand. Officer McFarland then performed a horizontal gaze nystagmus test, which presented indicators that Schmidbauer was intoxicated. Officer McFarland placed Schmidbauer under arrest. Schmidbauer later performed a breath test, which indicated that her blood alcohol content (BAC) was .277.

{¶ 5} Schmidbauer pled not guilty to OVI and filed a motion to suppress the evidence gathered as a result of the stop, including the results of the breath test. The trial court held a hearing regarding the stop, and Officer McFarland appeared and testified. In a separate proceeding, the trial court considered the admissibility of the breath test. The trial court overruled both portions of Schmidbauer's motion to suppress, finding that the stop was valid and that the breath test was admissible. Schmidbauer then pled no contest, and was found guilty of OVI. The trial court sentenced Schmidbauer to 180 days in jail, 90 days suspended, as well as a three-year driver's license suspension. Schmidbauer now appeals her conviction, raising the following assignments of error:

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED SCHMIDBAUER'S MOTION TO SUPPRESS AND FOUND THAT SCHMIDBAUER WAS LAWFULLY STOPPED, DETAINED, AND ARRESTED.

{¶ 8} Schmidbauer argues in her first assignment of error that the trial court erred in overruling her motion to suppress because the stop was unlawful.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing a trial court's decision regarding a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 10} Ohio recognizes two types of lawful traffic stops, a noninvestigatory stop in which the officer believes a traffic violation has occurred, and an investigatory stop where the officer investigates criminal activity. *Id.* at ¶13. The record is undisputed that Officer McFarland did not witness Schmidbauer commit a traffic violation because when he located her vehicle, she was stopped at a traffic light. Instead, McFarland testified that he executed the stop solely on David Bishop's information that Schmidbauer was driving while intoxicated. Therefore, this issue will be analyzed as an investigatory stop rather than a noninvestigatory traffic stop.

{¶ 11} The Fourth Amendment to the United States Constitution protects individuals from illegal searches and seizures. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675 (1985). Before an intrusion is justified, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). "The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity." *City of Maumee v. Weisner,* 87 Ohio St.3d 295 (1999), citing *Terry* at 22.

{¶ 12} Instead of employing an inflexible standard to determine whether an officer has a reasonable suspicion of criminal activity, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690 (1981). Accordingly, "both the content of information possessed by police and its degree of reliability" are pertinent when determining whether there is a reasonable suspicion of criminal activity to justify a stop. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412 (1990).

{¶ 13} The Ohio Supreme Court has specifically held that,

> where an officer making an investigative stop relies solely upon a
> dispatch, the state must demonstrate at a suppression hearing
> that the facts precipitating the dispatch justified a reasonable

suspicion of criminal activity. A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.

*Weisner,* 87 Ohio St.3d at paragraphs one and two of the syllabus.

{¶ 14} Specific to an instance where the officer's information is generated solely from an informant's tip, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Id.* at 299. "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered 'highly relevant in determining the value of [the informant's] report' are the informant's veracity, reliability, and basis of knowledge.'" *Id.*, quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317(1983).

> To assess the existence of these factors, it is useful to categorize informants based upon their typical characteristics. Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary[.]

*Weisner* at 300*.*

{¶ 15} Based upon the classification and varying degrees of veracity associated with each, our first task is to categorize Bishop as an anonymous informant, a known informant, or an identified citizen informant. The facts clearly indicate that Bishop was an identified citizen informant. Bishop called police and gave dispatch his full name and his occupation as manager of the Kroger store. Officer McFarland also testified that he was given Bishop's

address, and that at the time of the motion to suppress hearing, Bishop was still the acting manager at Kroger. Therefore, the record is clear that Bishop was an identified citizen informant when he called to report that Schmidbauer was driving while intoxicated.

{¶ 16} Normally, a personal observation by a citizen informant is afforded greater credibility and reliability than a secondhand description. *Gates*, 462 U.S. at 233-234. "The immediacy of the report lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." *State v. Abercrombie*, 12th Dist. No. CA2001-06-057, 2002-Ohio-2414, ¶ 15.

{¶ 17} Bishop's call to dispatch constituted an eyewitness account and an exact relay of the circumstances as they had just unfolded. Bishop was able to relay the fact that Schmidbauer was seen purchasing and consuming alcohol in the store, and that she was impaired enough that she urinated herself while in the store. Bishop also relayed his attempt to stop Schmidbauer from driving and that when she tried to start her car, she had difficulty operating her vehicle. Bishop was also able to relay that Schmidbauer pulled away from the Kroger parking lot, and that she was driving erratically. The record is also undisputed that Bishop relayed correct information regarding the description of Schmidbauer's car, including the correct license plate number, so that Officer McFarland was able to locate and stop Schmidbauer's car within minutes of the dispatch.

{¶ 18} After reviewing the record, we find that the state successfully demonstrated at the suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity because Bishop's telephone tip had sufficient indicia of reliability. Once Officer McFarland lawfully stopped Schmidbauer's car and approached her, he continued to have specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion of the stop and detention.

{¶ 19} McFarland testified that Schmidbauer's eyes were bloodshot and glassy, that

there was an odor of alcoholic beverages emanating from her car, and that Schmidbauer appeared confused. Officer McFarland also noticed that Schmidbauer's pants were wet, and that it appeared that she had urinated herself. When Officer McFarland directed Schmidbauer out of the car, she had difficulty maintaining her balance when she exited. Schmidbauer also stumbled when she walked. Officer McFarland also performed a horizontal gaze nystagmus test, which also indicated that Schmidbauer was intoxicated. Based on the totality of the circumstances, Officer McFarland's stop and detention did not violate Schmidbauer's rights against unreasonable search and seizure.

{¶ 20} Having found that Schmidbauer's Fourth Amendment right was not violated, the trial court did not err in overruling her motion to suppress. Therefore, Schmidbauer's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED THE MOTION TO SUPPRESS SCHMIDBAUER'S BREATH ALCOHOL TEST RESULT.

{¶ 23} Schmidbauer argues in her second assignment of error that the trial court erred in denying her motion to suppress the results of the breath test, which revealed that Schmidbauer's BAC was .277.

{¶ 24} Schmidbauer's breath test was performed using the Intoxilyzer 8000, which is a dual testing device, meaning that two breath samples are obtained and matched within 0.020% in order to verify a valid result. Schmidbauer contends that the Ohio Administrative Code requires there to be a "dry gas control" test between each sample, and that because one was not performed when she did her breath test, the results were invalid and should have been suppressed. However, this court has held that a dry gas control test is not necessary between each individual sample when consecutive breath samples are taken

during the same "subject test." *State v. Kormos*, 12th Dist. No. CA2011-08-059, 2012-Ohio-3128, ¶ 21, jurisdiction declined, 133 Ohio St.3d 1490, 2012-Ohio-5459.

{¶ 25} While Schmidbauer asks this court to revisit our decision in *Kormos*, we decline to do so. As no dry gas control was necessary between Schmidbauer's consecutive breath samples, the trial court did not err in denying her motion to suppress the results. Schmidbauer's second assignment of error is overruled.

{¶ 26} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.