[Cite as *State v. Liso*, 2013-Ohio-4759.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2012-08-017 |
| | : | O P I N I O N |
| - vs - | | 10/28/2013 |
| | : | |
| JAMES A. LISO, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2011-2227

Jessica A. Little, Brown County Prosecuting Attorney, Mary McMullen, 200 East Cherry Street, Georgetown, Ohio 45121, for plaintiff-appellee

Julie D. Steddom, 134 North Front Street, Ripley, Ohio 45167, for defendant-appellant

**PIPER, J.**

{¶ 1}   Defendant-appellant, James Liso, appeals his conviction and sentence in the Brown County Court of Common Pleas for one count of rape.

{¶ 2}   C.M. and B.M. are siblings who lived near Liso.  The children would pass through Liso's property in order to reach a creek where they played.  B.M., who was then nine years old, told his babysitter that Liso had forced him to perform oral sex by putting Liso's penis in B.M.'s mouth until he ejaculated.  C.M., who was then ten years old, also told

the babysitter that Liso had forced her to touch his exposed penis and also forced her to perform oral sex by putting his penis in her mouth until he ejaculated.

{¶ 3} Detectives Donnie Wagner and Rick Haney of the Brown County Sheriff's Office began to investigate the children's allegations. Detective Haney had the children's mother perform a controlled phone call, during which the children's mother confronted Liso about the allegations. Liso denied having any sexual contact with the children. The detectives later contacted Liso, and he came into the police station and was interviewed by Detective Haney, during which time, Liso denied the allegations. Liso left the police station after the interview and was not placed in custody. Liso asked the detectives if he could take a polygraph test to prove his innocence, and drove himself to the police station a second time in order to have the polygraph administered. During the pre-polygraph interview, Detective Wagner explained Liso's rights and told Liso that he was free to leave at any time. Liso signed a waiver of his *Miranda* rights, and continued with the interview. Detective Wagner offered Liso a telephone so that he could contact an attorney, though Liso chose not to. Liso exited the interview at one point to use the restroom and then returned to the interview room later.

{¶ 4} During the pre-polygraph interview, Detective Wagner and Liso began to discuss the possibility of charging Liso with less than a first-degree felony if the sexual contact was not facilitated by force. Liso then admitted to having oral sex with C.M. Liso stated that C.M. was "flirtatious," and that while he ejaculated into her mouth, the oral sex "wasn't satisfactory." Detective Haney then joined Detective Wagner and Liso in the interview room, and Liso reiterated that he had sexual contact with C.M.

{¶ 5} Liso was charged with two counts of rape, and he pled not guilty. Liso filed a motion to suppress the statement he made regarding having sexual contact with C.M. The trial court held a hearing, and denied the motion, finding that Liso's statement was admissible

because Liso had been advised of and had waived his *Miranda* rights. The matter then proceeded to a two-day jury trial, where Liso took the stand in his own defense and denied having any sexual contact with the children. Liso testified that he only confessed to having sexual contact with C.M. because he felt pressured to do so. The jury found Liso not guilty of raping B.M., but found him guilty of raping C.M. The trial court sentenced Liso to ten years in prison, but later resentenced him to ten years to life when the Ohio Department of Rehabilitation and Correction asked the trial court to clarify its sentence. Liso now appeals his conviction and sentence, raising three assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT, IN VIOLATION OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS, WHEN IT DENIED HIS MOTION TO SUPPRESS.

{¶ 8} Liso argues in his first assignment of error that the trial court erred in denying his motion to suppress because his confession was coerced by Detective Wagner's statement that if Liso did not use force during the sexual contact, he would not be charged with a first-degree felony.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran,* 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard."

*Cochran* at ¶ 12.

**{¶ 10}** As an initial matter, we note that Liso was afforded his *Miranda* rights in detail, and waived those rights. Within Liso's motion to suppress before the trial court, he argued that his *Miranda* rights were violated because such rights were not re-administered to him throughout the interview and immediately before he admitted the sexual contact with C.M. However, Liso did not expressly challenge the fact that Detective Wagner discussed what possible charges would result from the contact. On appeal, Liso does not challenge the validity of his *Miranda* waiver, and instead argues that his confession was not given voluntarily because of Detective Wagner's coercive tactics. Thus, our review of the record focuses solely on the voluntariness of Liso's confession, rather than his waiver of *Miranda* rights.[1]

**{¶ 11}** "A statement is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker.'" *State v. Wiles,* 59 Ohio St.3d 71, 81 (1991), quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860 (1961). Conversely, a confession is involuntary if it is the product of "coercive police activity." *State v. Bird,* 12th Dist. Butler No. CA2002-05-106, 2003-Ohio-2541, ¶ 38; *State v. Loza,* 71 Ohio St.3d 61, 66 (1994), quoting *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515 (1986). When determining whether a confession is voluntarily given, a court should consider "the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or

---

1. Within Liso's second assignment of error, he claims that his trial counsel was ineffective for failing to argue that his statement was involuntarily given. Normally, when an appellant fails to raise an issue in the motion to suppress, he has waived that issue on appeal and this court will conduct a plain error analysis. *State v. Franklin*, 12th Dist. Butler No. CA2001-04-074, 2002-Ohio-3876. However, to aid in our discussion of Liso's second assignment of error, we will address whether Liso's statement was voluntarily given in order to establish whether Liso's trial counsel was ineffective for failing to make a Due Process argument.

- 4 -

mistreatment; and the existence of threat or inducement." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *Bird,* 2003-Ohio-2541 at ¶ 39.

{¶ 12} We have reviewed the recording of Liso's pre-polygraph interview, including the statements, gestures, and demeanor of Liso and Detective Wagner, and find that several circumstances weigh heavily in favor of finding that Liso's confession was voluntary.

{¶ 13} The record is undisputed that Liso went to the police station voluntarily and was there upon his own request to take a polygraph test. Liso had been interviewed once before, yet voluntarily returned to the police station for the second interview. There was no evidence of physical abuse or deprivation during the second interview, and Detective Wagner even offered Liso a phone to call an attorney if he so chose. Detective Wagner did not make any threats against Liso, and Liso had ample freedom of movement, as he left the interview at one point to use the restroom and then came back to the interview room of his own accord. There is no indication in the record that Liso lacked the cognitive ability to completely understand the nature of the circumstances or the significance of his talking to Detective Wagner, and the entire interview was less than two hours long.

{¶ 14} Liso argues that despite the factors that weigh heavily in favor of voluntariness, his statement was coerced because Detective Wagner lied to him and told him that "I'm not gonna tell you that there may not be felony charges, I'm gonna tell you that you're not gonna be looking at a felony one, that's for damn sure."

{¶ 15} While police deception is "a factor bearing on voluntariness * * * this factor, standing alone, is not dispositive of the issue." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 61. Detective Wagner engaged in a discussion with Liso about the difference between criminal charges when force is used, and when force is not used. Although it is true that Detective Wagner made reference to Liso not being charged with a first-degree felony, several minutes passed between the time of Detective Wagner's statement and Liso's

confession. At no time during the interview did Detective Wagner promise Liso that he would not be charged with a serious crime or would not be subject to long-term imprisonment.

{¶ 16} Moreover, the two men discussed other issues as if mitigating Liso's conduct that may have facilitated Liso's confession; such as Liso being tired on the day of the incident, drinking alcohol before it occurred, and how "cute" C.M. was. The men also discussed that in the past, women were married at much younger ages, and Detective Wagner stated that he would not judge Liso for becoming sexually enticed by the child. Liso also stated that he was sorry for the incident, and that he wanted to tell his side of the story. We find Liso's suggestion that he falsely confessed to having sex with a ten-year-old child to avoid a first-degree felony unpersuasive, especially where the record does not reveal that Liso had any knowledge as to the exact punishments involved for different felonies. Liso's free will was not overborn by Detective Wagner's statement such that he would falsely confess to having sex with a ten-year-old child.[2]

{¶ 17} All of the issues raised during the interview may have led Liso to confess his crime. However, Detective Wagner's statement regarding what charges would be brought was not so coercive as to render Liso's statement involuntary when compared to all the other factors that weigh heavily in favor of finding Liso's statement voluntarily given.

{¶ 18} After reviewing the record, Liso's statement was voluntarily made and the state's use of his confession was not a deprivation of his Due Process rights. As such, Liso's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

---

2. Liso relies upon *State v. Shelley*, 12th Dist. Clermont No. CA88-04-032, 1998 WL 135252 (Dec. 19, 1988), to support his position that his statement was coerced. However, the facts and circumstances in *Shelley* are nowhere analogous to the case sub judice in that Shelley only confessed after police threatened to arrest his wife and warned Shelley of the negative consequences such arrest would have on his children.

{¶ 20} DEFENDANT-APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 21} Liso argues in his second assignment of error that he received ineffective assistance of counsel because his trial counsel failed to argue that his statement was involuntarily given, and for not calling the children's babysitter as a witness during the trial.

{¶ 22} When determining whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052 (1984), quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶ 23} Within *Strickland,* the Supreme Court established a two-part test which requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers,* 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland.* Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland,* 466 U.S at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 24} As previously referenced, Liso first argues that his trial counsel was ineffective for not including a Due Process/voluntariness argument in the motion to suppress. However, given our disposition of Liso's first assignment of error finding that Liso's statement was

voluntarily given, Liso is unable to demonstrate that the result of the motion to suppress would have been different had counsel argued Due Process. Therefore, Liso has failed to fulfill the *Strickland* standard because he cannot show that his trial counsel's motion to suppress argument prejudiced the defense to the point of depriving him of a fair trial.

{¶ 25} Liso next argues that his trial counsel was ineffective because he failed to call the children's babysitter as a witness. Liso argues within his brief that he and the babysitter had an "adversarial relationship" and that she possibly "coached the children to lie." Liso asserts that his trial counsel was ineffective for not calling the babysitter to explore the adversarial relationship further after counsel had "promised the jury that they would hear testimony of the babysitter." However, the record does not support this assertion.

{¶ 26} During opening statements, Liso's trial counsel stated,

> Well, at some point, evidence will show, Mr. - - there is a babysitter that babysits these children. And the babysitter, you will see, through testimony, has a – a very difficult relationship with Mr. Liso, and we'll develop that further. Doesn't like Mr. Liso, for unrelated things. And once the babysitter was alone with these kids she was one of the first people to raise her hand and say -- We believe the testimony would show, as I said, a very adversarial relationship between Mr. Liso and the babysitter. We will also * * * believe the testimony will show that the babysitter was one of the first – or not the first person who the kids reported this to. And we believe, through testimony of the children, you will see that.

{¶ 27} Despite Liso's argument, defense counsel never promised the jury that it would hear testimony from the babysitter directly, only that "through testimony" and "through testimony of the children," the jury would hear evidence regarding the babysitter. The record is undisputed that Liso's trial counsel did not subpoena the babysitter or list her as a defense witness. However, defense counsel cross-examined some of the state's witnesses, including the children, regarding the babysitter to develop further the evidence alluded to during opening statements. Therefore, defense counsel did not leave unfulfilled a promise to the

jury by not calling the babysitter as a witness.

{¶ 28} Moreover, we find that trial counsel's decision to not call the babysitter can be considered sound trial strategy. Had the babysitter testified, the jury would have heard the details of how the children shared their rape allegations, and how the babysitter found the allegations credible enough to report them. The jury could have, therefore, found the babysitter's testimony credible evidence of Liso's guilt. Also, had the babysitter testified as to why she and Liso shared an adversarial relationship, such testimony may have shed a negative light upon Liso for whatever conduct led to the adversarial relationship.

{¶ 29} The record also demonstrates that part of defense counsel's trial strategy was to cast doubt upon the state's choice to not call the babysitter as a witness. During closing arguments, defense counsel stated, "there is one piece of evidence they could have brought ya, [sic] ladies and gentlemen, but they didn't. And you can draw whatever conclusions from this you're allowed, because it's not about the Defendant not testifying. Where was [the babysitter]?" Although the state objected to defense counsel's statement, the trial court overruled the objection, and found that defense counsel was making a proper comment upon the babysitter not testifying. Defense counsel then continued,

> As I was saying, where is [the babysitter]? She is the lynchpin. She is the connection, but she brings this whole case together. Don't just skip over that part of the testimony. The kids told you, two beautiful, wonderful kids told you, they independent of each other, and that's the important part, because I asked that, independent of each other, within three days, confessed to this - - this babysitter. Does that pass the smell test? * * * She's the one, the catalyst, that began all of this. Where is she? Why did you not hear from her? Draw your conclusions. It's obvious.

{¶ 30} The record clearly indicates that part of the defense strategy was to cast doubt upon the babysitter's credibility by highlighting the fact that the state did not call her as a witness. Had defense counsel called the babysitter, this strategy would have been invalidated and it is possible that the jury would have heard testimony regarding the children's

allegations and found such testimony from the babysitter to be credible. During opening statements, Liso's trial counsel planted seeds of doubt in the minds of the jury as to the babysitter's motive and credibility, and then developed evidence by cross-examining the state's witnesses about the babysitter. Counsel then summarized the testimony during closing arguments, honing in on any doubt that may have been raised during the trial. Defense counsel's strategy was successful in procuring a not guilty verdict on the charge that Liso raped B.M.

{¶ 31} After reviewing the record, we find that Liso received effective assistance of counsel. As such, Liso's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT VIOLATED DEFENDANT-APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS WHEN IT RE-SENTENCED DEFENDANT-APPELLANT AFTER THE SENTENCE HAD BEEN EXECUTED.

{¶ 34} Liso argues in his final assignment of error that the trial court erred by resentencing him to ten years to life after having pronounced a ten-year sentence.

{¶ 35} As previously stated, the trial court sentenced Liso to a flat ten-year sentence. On September 5, 2012, the Ohio Department of Rehabilitation and Correction sent a letter to the trial court asking that the court clarify Liso's sentence because a ten-year sentence was not permitted by statute. The letter indicated that the statute required the inclusion of a possible life sentence as punishment for the rape of a child under 13 years old. The trial court held a resentencing hearing, and resentenced Liso to ten years to life, after confirming that Liso's notice of appeal had already been filed.

{¶ 36} On appeal, Liso argues that the trial court erred in resentencing him because a trial court cannot resentence a defendant after having imposed a sentence. The state responded to Liso's argument, and asserted that the trial court had the ability to resentence

Liso, but that the trial court's resentencing was improper because Ohio's sentencing statute now requires a minimum sentence of 25 years to life for the rape of a child less than 13 years old.

{¶ 37} Regardless of the parties' arguments as to what the sentence should be, the trial court lacked jurisdiction to resentence Liso while his appeal was pending. "An appeal is perfected upon the filing of a written notice of appeal. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal. The trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from." (Internal citations omitted.) *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9.

{¶ 38} The record indicates that Liso was sentenced on August 23, 2012 and filed his notice of appeal on August 31, 2012. At that point, the trial court was divested of its jurisdiction to resentence Liso to a term of ten years to life because doing so inhibited our ability to affirm, reverse, or modify the trial court's judgment. As such, we reverse and vacate the trial court's resentence of Liso.

{¶ 39} Once a trial court has executed a sentence, the trial court cannot modify that sentence unless the sentencing order was void or to correct a clerical mistake. *State v. Garretson*, 140 Ohio App.3d 554, 558 (12th Dist.2000). "A sentence is rendered void when there is an attempt by the court 'to disregard statutory requirements when imposing a sentence.'" *Id.*, quoting *State v. Beasley*, 14 Ohio St.3d 74, 75 (1984). Liso's ten-year sentence was void because the trial court disregarded statutory requirements when imposing the sentence because the statues do not permit a flat ten-year sentence for the rape of a child under 13 years of age. *See* R.C. 2907.02(B). As such, the trial court has the ability to modify the sentence.

{¶ 40} This court takes no position on what sentence should be imposed, as the trial

court's duty is to impose a proper sentence that is consistent with Ohio's sentencing statutes. Therefore, upon remand, the trial court shall resentence Liso according to law.

{¶ 41} Judgment affirmed in part, reversed in part, and remanded for the limited purpose of resentencing.

RINGLAND, P.J., and M. POWELL, J., concur.