[Cite as *State v. Allen*, 2014-Ohio-5752.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2014-03-048 |
| | : | O P I N I O N |
| - vs - | | 12/30/2014 |
| | : | |
| ANTHONY C. ALLEN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13CR29523

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Jeffery E. Richards, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Anthony Allen, appeals his convictions and sentence in the Warren County Court of Common Pleas for aggravated trafficking in drugs and possession of criminal tools.

{¶ 2} Deputy Andrew Grossenbaugh of the Warren County Sheriff's Office was monitoring traffic on portions of Interstate-71 in the early morning hours of September 30, 2013. At approximately 1:50 a.m., Deputy Grossenbaugh observed a speeding car, and

initiated a traffic stop when his radar confirmed that the car was going 91 m.p.h. in an area that had a maximum speed limit of 65 m.p.h. The driver of the car, later identified as Allen, pulled over when Deputy Grossenbaugh initiated the stop.

{¶ 3} Allen produced a valid Indiana driver's license, but there was some discrepancy regarding the vehicle's registration. When Deputy Grossenbaugh contacted police dispatch regarding the vehicle's license plate, dispatch was unable to retrieve information regarding the vehicle with the license plate number Deputy Grossenbaugh provided. Deputy Grossenbaugh became suspicious that the vehicle or license plate had been stolen or that the license plate was fictitious.

{¶ 4} Deputy Grossenbaugh's suspicions increased when he noticed that Allen had a large bulge in his front pant pocket, and that there were multiple air fresheners in the front area of the vehicle. Deputy Grossenbaugh tried asking Allen questions, but Allen would not speak or make eye contact with Deputy Grossenbaugh. Instead, Allen's passenger answered Deputy Grossenbaugh's questions.

{¶ 5} Deputy Grossenbaugh became increasingly suspicious that Allen was involved in criminal conduct, and called for backup. Deputy Randy Asencio arrived as Deputy Grossenbaugh's back up, and spoke to Allen and the passenger who both indicated that they were coming from a birthday party in Columbus. The deputies continued to investigate the vehicle's registration, and ran the vehicle identification number through a police data base, which revealed that the car was registered in Ohio to someone other than Allen. During this time, Allen was acting very nervous and was "shaking excessively," while the deputies asked him questions.

{¶ 6} The answers Allen and his passenger gave, along with Allen's nervous behavior and the vehicle registration issues, continued to arouse suspicions. Also during this time, the deputies learned that Allen had previously been arrested on drug and gun-related charges.

The deputies requested a drug-sniffing dog at approximately 2:14 a.m. to investigate whether or not Allen was involved in drug-related activity.

{¶ 7}   While the deputies waited for the canine unit to arrive, Deputy Grossenbaugh asked Allen's permission to search his person and the vehicle.  Allen agreed to a search of his person, but denied Deputy Grossenbaugh permission to search the car.  Deputy Grossenbaugh's search revealed that the bulge in Allen's pant pocket was cash, which in small bills, totaled approximately $400.

{¶ 8}   The deputies continued to talk to Allen and his passenger, and heard two different accounts.  Allen told Deputy Grossenbaugh that he and the passenger had dated about a month, that the two had stopped at a Walmart in Columbus, and that he earned the money in his pocket while working at a car detailing shop.  Allen's passenger spoke with Deputy Grossenbaugh separately and told him that she and Allen had been dating for three months, had made no stops that night, and that Allen was unemployed.  The inconsistent stories and continued nervous behavior of Allen caused Deputy Grossenbaugh's suspicions to rise even more.

{¶ 9}   The canine unit arrived at 2:48 a.m., approximately one hour after Deputy Grossenbaugh first initiated the traffic stop, but only 23 minutes after the available canine unit was located and dispatched.  The canine alerted to the presence of drugs in Allen's vehicle, and deputies found a digital scale and a bag of 600 pills in a front-seat console.  The pills were later determined to be ecstasy.  At almost the same time as the canine unit arrived, Deputy Asencio confirmed with the Indiana State Police that the vehicle was properly registered to Allen in Indiana.

{¶ 10} Allen was indicted and charged with aggravated trafficking in drugs, aggravated possession of drugs, and possession of criminal tools.  Allen moved to suppress the evidence seized during the car search, claiming that the duration of the stop was

unreasonable.  The trial court held a hearing on Allen's motion to suppress, and later denied Allen's motion.  The matter proceeded to a jury trial, with the jury returning guilty verdicts on each count.  The trial court merged the aggravated possession of drugs into the aggravated trafficking in drugs count, and sentenced Allen to eight years on the aggravated trafficking count and one year on the possession of criminal tools charge.  The trial court ran the two sentences concurrently, for an aggregate eight-year sentence.  Allen now appeals his convictions and sentence, raising the following assignment of error:

{¶ 11} THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE OF THE SEARCH OF DEFENDANT-APPELLANT'S CAR.

{¶ 12}  Allen argues in his assignment of error that the trial court erred in denying his motion to suppress because the duration of the traffic stop was unreasonable.

{¶ 13}  Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility.  *Id.*  Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038.  "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 14}  The Fourth Amendment to the United States Constitution protects persons from unreasonable governmental searches and seizures.  *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675 (1985).  Regarding the legality of a traffic stop, "where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the

stop is not unreasonable under the Fourth Amendment to the United States Constitution * * *." *State v. Kelly*, 188 Ohio App.3d 842, 846, 2010-Ohio-3560, ¶ 15 (12th Dist.).

{¶ 15} Once a police officer has made a valid traffic stop, the driver may be detained only as long as the officer continues to have a reasonable suspicion that there has been a violation of the law. *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 13. Ohio law is clear that if during an initial traffic stop, "an officer ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *State v. Smith*, 12th Dist. Warren App. No. CA2012-03-022, 2012-Ohio-5962, ¶ 13. Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

{¶ 16} "In forming reasonable articulable suspicion, law enforcement officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Smith* at ¶ 14. Therefore, determining whether the officer's actions were justified depends upon the totality of the circumstances, which must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991).

{¶ 17} Allen argues that the duration of the stop was unreasonable and that the stop should have ended right away with Deputy Grossenbaugh issuing a speeding ticket. However, after reviewing record, we disagree.

{¶ 18} The trial court heard testimony at the suppression hearing from Deputies Grossenbaugh and Asencio that their investigation was based upon reasonable articulable suspicions that Allen was involved in criminal activity. Deputy Grossenbaugh testified

specifically that he initiated the traffic stop after he observed Allen's vehicle traveling 91 m.p.h. in a zone with a posted speed limit of 65 m.p.h.  As such, the traffic stop was valid at its inception because Deputy Grossenbaugh observed a violation of Ohio's traffic laws.  Once Deputy Grossenbaugh began to investigate the speeding violation, he obtained articulable suspicions that criminal activity was afoot, which permitted his investigation to proceed.

{¶ 19} Deputy Grossenbaugh testified that he informed the police communication center that he had performed the traffic stop, and that he tried to obtain registration information on the vehicle driven by Allen.  However, police dispatch was unable to verify the vehicle's registration as "there was nothing in the file for that vehicle."  When asked the importance of receiving notice that the vehicle's registration did not return any information, Deputy Grossenbaugh testified that "whenever you don't receive a license plate information back, for any state, it raises caution to other possible things that may be going on, that you need to investigation further."  When asked to clarify what "possible things" needed further investigation, Deputy Grossenbaugh explained "possibly a stolen vehicle.  It could be a fictitious tag, it could be [a] tag that's stolen.  It could be any number of things."  Given the fact that the license plate did not register as being valid, Deputy Grossenbaugh began to have reasonable articulable suspicion that some criminal activity was occurring.

{¶ 20} Once Deputy Grossenbaugh approached the vehicle, he encountered Allen and a female passenger sitting in the front-passenger seat.  Deputy Grossenbaugh testified that immediately upon encountering Allen, he noticed that Allen had "what appeared to be a large sum of money in [his] front left pocket."  Deputy Grossenbaugh also testified that when he asked Allen questions, the passenger would answer rather than Allen, and that Allen avoided eye contact with him when Deputy Grossenbaugh tried to engage in conversation.

{¶ 21} Deputy Grossenbaugh further testified that he observed air fresheners in the car, including one hanging from the rear view mirror, as well as a can of air freshener in the

glove compartment that he saw when Allen opened the glove compartment to retrieve paperwork. Deputy Grossenbaugh testified that in his experience, the air fresheners, Allen's nervous behavior, as well as the registration issues were all indications that some criminal activity was occurring that required further investigation.

{¶ 22} To that end, Deputy Grossenbaugh decided to call for back up, and testified that he then ran the vehicle identification number through another police data base to learn more about the vehicle's registration. Deputy Grossenbaugh testified that the information he received indicated that the vehicle was registered in Ohio at the time, not in Indiana as Allen had told him. At that point during the stop, Deputy Grossenbaugh had information that the vehicle was registered to someone else in Ohio, and that Allen may not have been the valid owner as he claimed.

{¶ 23} Deputy Grossenbaugh testified that Deputy Asencio arrived on the scene, and the two contacted police dispatch again to learn more information about Allen and the vehicle he was driving. Deputy Grossenbaugh testified that they learned that Allen had previously been arrested for "large amounts of drugs as well as gun charges." Deputy Grossenbaugh further testified that he observed Allen's nervous behavior continue, and that at one point, Allen was "shaking excessively."

{¶ 24} Deputy Grossenbaugh testified that he and Deputy Asencio decided to request a canine unit, and that when they contacted police dispatch, they were informed that no surrounding counties had a canine unit available so that one had to be brought from Greene County. However, during the time that the deputies waited for the canine unit to arrive, they continued to investigate the vehicle registration issue.

{¶ 25} Deputy Grossenbaugh engaged in conversation with Allen and the passenger, and observed that Allen was continuing his nervous behavior. When Deputy Grossenbaugh asked Allen for permission to search his person and vehicle, Allen gave Deputy

Grossenbaugh permission to search his person, but not the vehicle. Deputy Grossenbaugh testified that he found cash in Allen's pocket that was "doubled over" in small bills totaling "just under $400." Deputy Grossenbaugh testified that he also found a receipt from a Walmart in the Columbus area during his search of Allen's person, and that Allen stated the money came from his employment at a car detailing shop. These statements contradicted statements made by Allen's passenger that Allen and she did not make any stops during their trip, and that Allen was unemployed. The inconsistent accounts continued to cause Deputy Grossenbaugh to have suspicion that something criminal was afoot.

{¶ 26} Deputy Asencio also testified at the motion to suppress hearing, and stated that he had approximately seven years of experience at the time of the incident, including numerous drug-related training courses and interdiction classes. Deputy Asencio testified that he was contacted by Deputy Grossenbaugh on the night in question, and that Deputy Grossenbaugh told him that he had observed several "criminal indicators" during the traffic stop. These indicators included multiple air fresheners in Allen's vehicle, Allen's nervous behavior, and Allen's refusal to answer his questions. Deputy Asencio testified that in his experience, he agreed with Deputy Grossenbaugh that the circumstances indicated drug-related activity.

{¶ 27} Deputy Asencio testified that he spoke to Allen and his passenger, and that the passenger's account of where they had been and the timing of their trip did not "fit" because the passenger's account left time periods "unaccounted" for based upon what time they allegedly left the Columbus area and how far they had traveled. Deputy Asencio also testified that he observed Allen's nervous behavior and that "you could tell he was nervous. You know, he was looking around a lot, moving around a lot, * * * you can see him visibly breathing hard * * *."

{¶ 28} Deputy Asencio testified that he requested the canine unit at approximately

2:14 a.m., and that one was found and dispatched at 2:24 am. Deputy Asencio testified that the canine unit arrived on the scene at approximately 2:47 a.m., at almost the same time as he received confirmation from the Indiana police that Allen was the owner of the car and that it was properly registered in Indiana.

{¶ 29} While Allen argues that the stop should have ended before the canine unit arrived, we find that the deputies had reasonable articulable suspicion to continue the investigation. The record is clear that the deputies were investigating the vehicle's registration issues, and that Deputy Asencio never received confirmation that Allen was the owner of the car and had a valid registration in Indiana until the canine arrived on the scene.

{¶ 30} While the canine unit took almost an hour to arrive on the scene after the initial stop was made, the record indicates that the delay was due to the fact that no units were available from surrounding counties, and one had to be brought in from a county located further away. Even so, throughout the time that the deputies waited for the unit to arrive, they continued to investigate whether Allen was the owner of the vehicle and whether he had a valid registration. Additionally, deputies observed several other indications that drug-related activity was occurring, including the multiple air fresheners in the car, the conflicting accounts between Allen and his passenger, as well as Allen's nervous behavior.

{¶ 31} After reviewing the record, we find that the stop was valid at its inception once Deputy Grossenbaugh observed Allen speeding. Once Deputy Grossenbaugh began to investigate Allen's speeding, the specific and articulable facts were such that Deputy Grossenbaugh developed a reasonable articulable suspicion that criminal activity was occurring, and such reasonably warranted the continuing investigation.

{¶ 32} Deputies Grossenbaugh and Asencio were permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that night including Allen's use of multiple air

fresheners, nervous behavior, and conflicting accounts offered by Allen and his passenger. These circumstances, when added to the fact that the deputies had been unable to verify the proper registration of the vehicle, provided the necessary basis to reasonably continue the stop until the canine unit arrived. In fact, it was not until the moment the canine unit arrived that Deputy Asencio received conclusive validation that Allen was the registered owner of the vehicle he was driving.

{¶ 33} The stop was valid as its inception and continued to be valid as the deputies continued their investigation so that the trial court properly overruled Allen's motion to suppress. As such, Allen's assignment of error is overruled.

{¶ 34} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.